## CITIZENS STATE BANK OF TWIN VALLEY v. H. L. MOEBECK.

### OLE HOLT, INTERVENER AND APPELLANT.[1]

#### July 18, 1919.

#### No. 21,300.

**Vendor and purchaser — estoppel of buyer as to tillable acreage.**

Where the vendee in a contract for the purchase of a tract of land, undertakes to and does personally examine the same as fully and completely as he chooses, and determines in his own mind the number of acres of tillable land as well as the number of acres of slough thereon, the same never having been measured, and, having communicated his opinion thereof to the seller, who replied thereto that he believed that there were more acres of tillable land, and the vendee then enters into a contract for the purchase of the same, he cannot thereafter be heard to assert that he relied upon the representations of the seller as to the number of acres of tillable land and thereby avoid the contract upon the ground of fraud.

Action in the district court for Clay county to recover $427.56 for conversion of grain. Ole Holt filed his complaint in intervention. The facts are stated in the opinion. The case was tried before Dancer, J.,

[1]Reported in 173 N. W. 853.

who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which answered in the affirmative the question: "Was the contract for deed obtained by M. E. Dahl and H. H. Dahl from the intervener by fraud?" and in the negative the question: "Is the plaintiff a bona fide holder of the promissory note described in the complaint?" and returned a verdict in favor of defendant and intervener. Plaintiff's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment, defendant and intervener appealed. Affirmed.

*Christian G. Dosland,* for appellants.

*F. H. Peterson* and *Oliver Ostensoe,* for respondent.

QUINN, J.

This is an action to recover the value of certain grain alleged to have been converted by the defendant to his own use and to which plaintiff claims title and the right of possession under a certain chattel mortgage executed by the intervener on August 25, 1913. A verdict and special findings were returned by the jury in favor of both the defendant and intervener. Upon a motion the trial court, notwithstanding the verdict, ordered judgment for the plaintiff and against the defendant for the sum of $414, and against both defendant and intervener for the costs and disbursements. Judgment was so entered and this appeal is from the judgment.

M. E. and H. H. Dahl are brothers. During the times here in question the former was cashier of the plaintiff bank and the latter a merchant in the village of Ulen, a few miles distant from Twin Valley. They owned the 120 acres of land in controversy, the record title to which was in M. E. Dahl. The intervener was a farmer residing upon and operating a farm of 640 acres located about four miles from Ulen and adjoining the 120 acres referred to.

On the day in question the intervener and H. H. Dahl met at the village of Ulen. Dahl proposed to sell the 120 acres to Holt and asked him to go and look it over. Holt, in company with his son 26 years of age, went and viewed the land. During the afternoon Holt returned to Ulen and talked with Dahl as to the amount of tillable land in the tract. They arrived at a bargain and Holt remained in town until Dahl ar-

rived from Twin Valley. The price agreed upon was $20 per acre, payable as follows: $400 cash, $400 November 15, 1914, and $400 November 15, 1915, with interest at six per cent per annum, when a deed was to be given subject to a mortgage of $1,200. M. E. Dahl arrived from Twin Valley at about seven o'clock p. m. He then prepared a contract in accordance with the bargain as above indicated, which he and Mr. Holt signed and acknowledged. No mention was made in the contract of the giving of any notes. Holt had no money with which to make the cash payment. He executed a note for $400 payable to the order of the plaintiff bank on November 15, 1913, with interest at the rate of 10 per cent per annum. To secure the payment of such note he executed a chattel mortgage upon his undivided one-half of 150 acres of wheat and 250 acres of oats then in shock on the farm where he was living. On August 26 the note was turned over to the bank and entered upon its records as bills receivable, and $400 was placed to the credit of M. E. and H. H. Dahl, subject to check. On August 27, 1913, the mortgage was duly filed for record in the office of the register of deeds of the county.

After threshing the intervener hauled the grain to the defendant's elevator at Ulen. Plaintiff made a demand upon the defendant therefor which was refused, defendant claiming it in payment of a debt. Plaintiff then proceeded to foreclose its mortgage without obtaining possession of the grain. The usual notice of foreclosure sale was given, which provided for the sale of the grain on December 18, 1913, at public auction to the highest bidder. These matters were set forth in the complaint. It is alleged in the complaint that the grain was sold to the plaintiff at such foreclosure sale for the sum of $427.56 by a constable of the village. Thereafter the plaintiff brought this action against the defendant for the conversion of the grain.

In his answer the defendant admits the incorporation of the plaintiff and alleges that he has not sufficient knowledge or information to form a belief as to the truth of the other allegations of the complaint and therefore denies the same.

Ole Holt, the mortgagor, appeared in the action and filed a complaint in intervention, in which he admits that he made, executed and delivered the promissory note and chattel mortgage mentioned in the complaint to the plaintiff on the twenty-fifth day of August, 1913; al-

leges that the note was given as part payment of the purchase price of the land; admits that the grain mentioned in the complaint was a portion of that raised by him on the premises where he resided; alleges that he was the owner of the same on December 18, 1913, and denies each and every other allegation in plaintiff's complaint contained. He further alleges, upon information and belief, by way of counterclaim, that on August 25, 1913, the plaintiff bank and M. E. Dahl were the owners of the land in controversy, and that on that day he entered into a contract for a deed whereby the plaintiff and M. E. Dahl agreed to sell and convey to him the real estate in question at the agreed price of $2,400, payable as follows: $400 cash, $400 November 15, 1914, and $400 November 15, 1915, with interest at the rate of 6 per cent per annum, and the assumption of the mortgage of $1,200 thereon; that at the time of the making of said contract he executed and delivered to the plaintiff his promissory note for $400, which note represents the first payment to be made on the land as mentioned in said contract, together with the chattel mortgage; that at the same time he executed to plaintiff two other promissory notes for $400, payable November 15, 1914, and November 15, 1915; that the plaintiff and the said M. E. Dahl, on the twenty-fifth day of August, 1913, for the purpose of cheating and defrauding the intervener, fraudulently represented and stated to him that said real estate was of the fair and reasonable value of $20 per acre; that all of said land could be broke with the exception of 40 acres; that that balance was good pasture land; that unless the intervener purchased said premises immediately he would lose the opportunity, for the reason that others were anxious to purchase the same; that such representations were false; that the said M. E. Dahl made such representations knowing them to be false and with the intention of cheating and defrauding said intervener; that, believing and relying upon such statements, intervener signed said contract; that intervener has not performed any of the terms or conditions of the contract, for the reason that he discovered shortly after it was signed that plaintiff and M. E. Dahl had defrauded him, and that plaintiff is not a bona fide holder of said note and did not obtain the same in the ordinary course of business.

The case was twice tried in the court below by able counsel. Un-

doubtedly the parties have offered all of the testimony which they had in support of the various contentions. The learned trial judge, notwithstanding the findings of the jury, ordered judgment in favor of the plaintiff and against the defendant, placing the order squarely upon the proposition that the testimony failed to establish any misrepresentations which the vendee in the land transaction had a right to rely upon as a basis for a charge of fraud.

We are of the opinion that the conclusion arrived at by the trial court was the correct one. In his pleading the intervener alleges that the plaintiff and M. E. Dahl were the owners of the 120 acres of land in question, and that the statements and representations complained of were made to him by M. E. Dahl. But, aside from all technicalities, it clearly appears that the intervener dealt entirely with H. H. Dahl so far as arriving at a bargain for the purchase of the land is concerned. Mr. Holt is a man of mature years, has been a farmer for upwards of 16 years and has resided upon a farm adjoining the premises in question for two years. After the purchase of the land was suggested to him he went, in company with his son, a young man of 26 years, and looked the place over with a view to purchasing. The grain thereon was then in shock and the hay in stacks. He testified that the grass in the slough was above his head, and that Dahl told him it would make good pasture. It is further alleged in his pleading that he is of Scandinavian birth, and does not understand the English language well, but it does not appear whether Mr. Dahl was familiar with the Scandinavian language.

It is insisted on behalf of the intervener that after looking over the land he was of the opinion that there were only about 60 acres of tillable land in the tract. He so stated to Mr. Dahl in their conversation, and Mr. Dahl told him that he thought there were between 80 and 90. It is clear from the testimony that Mr. Holt understood that the tillable land had never been measured and that Mr. Dahl's statement, like his own, was a mere estimate. He does not particularly complain of the number of acres in the slough, but says that it was wetter than he was given to understand. These are the reasons which he gives for refusing to carry out his contract, claiming that on account of the difference in the acreage of tillable land and its condition as to being wet,

the entire tract was worth $8 per acre less than it would have been had it been as represented. He testified repeatedly, both upon direct and cross examination, that he knew Mr. Dahl's statement as to the number of acres of tillable land was a mere guess, that is, an estimate, and that he knew Mr. Dahl had never had the same surveyed. This testimony, when taken into consideration in connection with the testimony as to the number of acres of tillable land at the time of the trial, which was a mere estimate by the witnesses upon both sides, we think insufficient to support the contention of the intervener as to the question of fraud.

The intervener testified in effect that, when he left Ulen on August 25 to see the land, he first returned to his home and had his dinner; that he and his son then went and looked the land over; that in so doing he walked from the southwest to the northwest corner thereof along the west line and then returned about 30 or 40 rods east of the west line over the stubble and mowed ground; that there were about 30 acres of grain and about the same amount of hay land that had been cut over; that he could see the water about ten rods distant out in the slough in the tall grass; that he thought there were about 40 acres in the slough, but the grass was so tall he could not tell very well, and that he was in a hurry and there was so much water that he could not go around the slough so as to see how many acres there were; that the slough was not bigger, but wetter and more swampy, than he thought it was. He had a full and complete opportunity to see what the land and its condition were. He saw the slough, the tall grass, the water therein at a distance of ten rods, and the stony portion of the land. He could not cross the outlet without getting wet, and there was so much water he could not walk around the slough in his hurry. He had lived within a half mile of the land for two years and was familiar with farm lands in that vicinity. Such a showing, coming direct from the purchaser's own testimony, does not make a case upon which to predicate a charge of fraud. There is no showing that any artifice was practiced on the part of H. H. Dahl to in any manner prevent the intervener from making a full and complete investigation of the situation. Knowing and seeing what he did, the intervener had no right to lay aside all the information which he had obtained and rely entirely upon the mere

statement of the seller that he thought there were between 80 and 90 acres of breakable land in the tract.

The intervener alleges in his pleading that he gave the note of $400 and the chattel mortgage to the plaintiff to evidence and secure the first payment mentioned in the land contract, and upon the trial testified that he did not remember that anything was said about his obtaining the money from the bank with which to make the cash payment, while both M. E. and H. H. Dahl testified positively that such was the talk and arrangement. Under the issue as made by the pleadings, and in the absence of a showing of fraud in connection with the land transaction, the question as to the bank's claim that it was a bona fide purchaser of the note, is unimportant. Of course, if the note and chattel mortgage were given for money furnished Holt to make cash payment on the purchase of the land, that ends the case in plaintiff's favor. The jury were so charged. In his pleading the intervener alleged that he executed the note and mortgage to plaintiff. His testimony indicates that he supposed the instruments ran to M. E. Dahl, and not to the bank. The bank either made a loan to the intervener or else the note and mortgage were taken in its name for the convenience of Dahl. There was no indorsement or assignment to the bank, and the question of bona fide holder does not arise. But, assuming the transaction of the note and chattel mortgage to have been Dahl's and not the bank's except in name, still the cancelation of the land contract does not furnish any defense or ground for relief against plaintiff's claim. The chattel mortgage was foreclosed before the cancelation and while the contract was in force. The amount realized on the foreclosure the law applies upon the debt, the note. While an unsatisfied judgment for an instalment on an executory land contract will be discharged of record if the contract is terminated by the vendor, instalments paid may not be recovered. Warren v. Ward, 91 Minn. 254, 97 N. W. 886. The foreclosure amounted to a payment while the contract was in force, Clark v. Gaar, Scott & Co. 78 Minn. 492, 81 N. W. 530, and we see no way in which the termination by Dahl of the contract in question can avail as a defense for the defendant herein, or as a ground for relief to the intervener.

The order is affirmed.